[671 NYS2d 66]

THROGS NECK BAGELS, INC., Doing Business as A-WHOLE LOT OF BAGELS, Respondent, v GA INSURANCE COMPANY OF NEW YORK, Appellant. (And a Third-Party Action.)

First Department, April 9, 1998

## APPEARANCES OF COUNSEL

*Molly Klapper* of counsel, New York City *(Weg & Myers, P. C.,* attorneys), for respondent.

*Renee M. Plessner* of counsel, New York City *(Arthur N. Brook* on the brief; *Mound, Cotton & Wollan,* attorneys), for appellant.

## OPINION OF THE COURT

ELLERIN, J.

The question before us, one that does not appear to have been previously addressed by our courts, involves the scope and import of the "enforcement of ordinance or law exclusion" in a business owners' insurance policy that provides underlying coverage for losses to property due to specified perils including fire or explosion.

Plaintiff was the owner and operator of a bagel store in leased premises located in a building containing six stores at the corner of East Tremont Avenue and Bruckner Boulevard in the Bronx. On May 20, 1991, an accident between an automobile and a gasoline tank truck owned by the third-party defendant occurred at the intersection where the building was located. As a result, 1,500 gallons of gasoline spilled into the street and ignited, resulting in a conflagration that caused five deaths and destroyed three of the six stores located in the building containing plaintiff's bagel shop.

The bagel shop itself and its contents, although damaged by smoke and water, were not consumed in the blaze. However, on the date of the fire, the Department of Buildings immediately issued a Peremptory Vacate Order addressed to all owners, lessees, tenants and occupants of the building directing that all persons occupying the building vacate it forthwith and until it was declared safe by the Department, under pain of fine or imprisonment, specifically noting: "This order is issued because there is IMMINENT DANGER TO THE SAFETY AND LIFE OF THE OCCUPANTS, IN THAT A SECTION 50' x 87 1/2' HAS SUFFERED SEVERE STRUCTURAL DAMAGE AS A RESULT OF BEING STRUCK BY A GASOLINE TRUCK WHICH IGNITED A FIRE. ENTIRE ROOF STRUCTURE HAS COLLAPSED LEAVING EXTERIOR WALLS IN IMMINENT DANGER OF COLLAPSE. **UNAFFECTED AREAS TO BE REOC-

CUPIED UPON COMPLETION OF DEMOLITION OPERATIONS.**"
(Emphasis in original.)

Ten days later, plaintiff was notified by its landlord that its tenancy was being cancelled and it was ordered to immediately vacate the premises.[1]

Plaintiff thereupon removed its equipment from the premises and ceased doing business. Plaintiff then filed a claim under the business owners' policy that had been issued by defendant insurer and which provided for coverage for losses resulting from specified perils, including fire or explosion. In its claim, plaintiff alleged loss caused by fire and its effects and sought to recover approximately $127,500 for property damage, including the actual damage caused by smoke and water, the cost of removal of other, undamaged equipment, the cost of the improvements and betterments that plaintiff had made to the store and that could not be removed and $100,000 for business interruption loss, which was also specifically covered by the policy subject to certain limitations not at issue here. In response, defendant offered plaintiff the sum of $13,622.75, which, it alleged, represented the actual damage to plaintiff's stock, supplies, furniture, fixtures and equipment.

In denying the remainder of the claim, defendant relied upon the following exclusion contained in the policy:

"B. Exclusions

"1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

"a. Ordinance or Law

"The enforcement of any ordinance or law:

"(1) Regulating the construction, use or repair of any property; or

"(2) Requiring the tearing down of any property, including the cost of removing its debris."

Plaintiff brought this action seeking recovery under the policy and defendant denied liability based solely on the

---

1. Although the cancellation notice referred to paragraph 9 of the lease, this appears to be an error, since that paragraph only refers to plate glass coverage. Elsewhere, in paragraph 5, the lease did in fact provide for cancellation in the event of "substantial damage by fire or other casualty."

ordinance or law exclusion.[2] The parties moved for summary judgment and the IAS Court granted plaintiff's motion for the relief demanded in the complaint and denied defendant's motion on the ground that the damage or loss was due to the fire and explosion resulting from the collision between the vehicle and the gasoline truck and that the ordinance or law exclusion did not apply to such sudden or unforeseen events. This appeal ensued.

In the absence of prior appellate authority on the precise issue before us, we look first to the general principles governing the interpretation of insurance policies. An insurance contract is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the intent of the parties as expressed in the language employed in the policy (*Breed v Insurance Co.,* 46 NY2d 351, 355). Generally, the court will "construe the limitations of an insurance contract in the light of the speech of common [people]" (*Gittelson v Mutual Life Ins. Co.,* 266 App Div 141, 145, citing *Lewis v Ocean Acc. & Guar. Corp.,* 224 NY 18) and any ambiguities will be resolved against the insurer, as drafter of the policy (*Greaves v Public Serv. Mut. Ins. Co.,* 5 NY2d 120, 125). The touchstone for interpreting insurance contracts, as with other contracts, is the reasonable expectation of the parties (*Bird v St. Paul Fire & Mar. Ins. Co.,* 224 NY 47, 51).

In accord with these fundamental principles, we first turn to the question of whether plaintiff's losses were, in the first instance, caused by a covered event, in this case fire and/or explosion, so as to bring the losses within the ambit of the policy. In determining whether a particular loss was caused by an event covered by an insurance policy where other, noncovered events operate more closely in time or space in producing the loss, the question of whether the covered event was sufficiently proximate to the loss to require that the insurer compensate the insured will depend on whether it was the dominant and efficient cause (*see, Standard Oil Co. v United States,* 340 US 54, 58, quoting *Dole v New England Mut. Mar. Ins. Co.,* 2 Cliff 394, 7 Fed Cas 837, 853 [proximate cause " 'does not necessarily refer to the cause nearest in point of time to

---

**2.** Defendant did not deny liability on the ground that any part of plaintiff's loss was caused by the landlord's cancellation of its lease. Under the policy, lease cancellation, unlike the enforcement of a law or ordinance, is not a "cause" that is subject to the concurrent loss provisions, although it is subject to a limited "Business Income and Extra Expense Exclusion".

the loss. But the true meaning of that maxim is, that it refers to that cause which is most nearly and essentially connected with the loss as its efficient cause' "]; *see also, Tonkin v California Ins. Co.*, 294 NY 326; *Home Ins. Co. v American Ins. Co.*, 147 AD2d 353, 354 [the " 'concept of proximate cause when applied to insurance policies is a limited one' * * * (and) 'the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to metaphysical beginnings' " (citations omitted)]; *Granchelli v Travelers Ins. Co.*, 167 AD2d 839; *Molycorp, Inc. v Aetna Cas. & Sur. Co.*, 78 AD2d 510; *Cresthill Indus. v Providence Washington Ins. Co.*, 53 AD2d 488, 498-499).

Specifically in reference to fire insurance, it has been said: "Loss by fire within the policy's coverage is not limited to fire damage; rather, all losses are covered which are directly, proximately, or immediately caused by a fire or combustion. In other words, the damage for which fire insurers are liable is not confined to loss by actual burning and consuming, but they are liable for all losses which are the immediate consequences of fire or burning, or for all losses of which fire is the proximate cause. This follows from the fact that the fair and reasonable interpretation of a policy of insurance against loss by fire will include within the obligation of the insurer every loss which necessarily follows from the occurrence of the fire, to the amount of the actual injury to subject of the risk, whenever that injury arises directly and immediately from the peril, or necessarily from incidental and surrounding circumstances, the operation and influence of which could not be avoided" (10A Couch, Insurance 2d § 42:30).

Under these principles, and the most fundamental principle that the intent of the parties is paramount (*Bird v St. Paul Fire & Mar. Ins. Co.*, 224 NY, *supra*, at 51; *Kula v State Farm Fire & Cas. Co.*, 212 AD2d 16, 21, *lv denied and dismissed* 87 NY2d 953), there is here no issue of fact that, in the first instance, the fire was the efficient cause of all the losses for which plaintiff seeks coverage in this action, i.e., the cost of removing property, the improvements that could not be removed and business losses. Such losses "necessarily follow[ed]" from the fact that the fire had taken place in the building, rendering the premises unsafe. Thus, since fire is one of the hazards for which plaintiff purchased coverage, those losses will be covered unless they are elsewhere subject to an exclusion.

Where an insured has met its burden of showing that a valid insurance policy was in full force and effect and that it incurred

a presumptively covered loss, the burden of proof shifts to the insurer to demonstrate that an exclusion contained in the policy defeats the claim (*see, Moneta Dev. Corp. v Generali Ins. Co.*, 212 AD2d 428, 429). To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation and applies in the particular case (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652), and that its interpretation of the exclusion is the " '*only* construction that [could] fairly be placed thereon' " (*Vinocur's Inc. v CNA Ins. Cos.*, 132 AD2d 543, 544, *lv denied* 71 NY2d 803, quoting *American Home Assur. Co. v Port Auth.*, 66 AD2d 269, 276; *see also, Sincoff v Liberty Mut. Fire Ins. Co.*, 11 NY2d 386, 390).

Here, defendant argues that it does not matter whether the fire was, in the first instance, the efficient cause of the losses, since the policy excludes coverage for losses caused, either directly or indirectly, by ordinance or law, and does so "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Thus, defendant argues that since plaintiff's vacatur of the premises was in immediate response to an order of the Department of Buildings, all of plaintiff's losses that stem from that vacatur were caused, at least in part, by that order.

The viability of defendant's position rests on the assumption that the order of the Department of Buildings was, in fact, a contributing cause of the loss. Defendant, however, has failed to meet its burden of establishing that such was the case. In reality, the order served merely as a confirmation of the circumstances regarding the actual cause of the loss, i.e., the fact that the premises had been rendered structurally unsound and unfit for continued use as a result of the fire. (Authorities in other jurisdictions on this point are instructive. *See, e.g., DiGravina v Merchants Mut. Ins. Co.*, 1991 WL 90737 [SD NY, May 23, 1991, Haight, J.]; *Norfolk & Dedham Mut. Fire Ins. Co. v deMarta*, 799 F Supp 33, 36 [ED Pa], *affd* 993 F2d 225 [3d Cir]; *Frontis v Milwaukee Ins. Co.*, 156 Conn 492, 500, 242 A2d 749, 753; *cf., Feinbloom v Camden Fire Ins. Assn.*, 54 NJ Super 541, 149 A2d 616, *certification denied* 30 NJ 154, 152 A2d 172.) It cannot logically be claimed that plaintiff would not have vacated a building rendered structurally unsound but for an order from the Department of Buildings. On the contrary, when the order was served, the need to vacate the premises and all the immediate and consequential losses stemming from

the fire and explosion, both direct and indirect, had already been "caused".

To construe the exclusion in the manner urged by defendant insurer would be to render the underlying coverage nugatory in a host of cases where it would reasonably be expected to apply. The Department of Buildings or other governmental agency could be expected to frequently issue various orders and decrees in response to the consequences of any catastrophic event affecting public safety, and an insurer could avoid coverage by simply claiming that such an order was one of the "causes" of the loss. Indeed, to apply defendant's interpretation here would mean that even if plaintiff's store had been one of those that had been completely destroyed by the fire, defendant could have declined coverage on the identical ground that the issuance of the vacate order was a concurrent "cause" of the loss. To hold that the law or ordinance exclusion applies under circumstances such as here present would be an unreasonable construction that would frustrate the underlying purpose of the policy.

Since we find that the order of the Department of Buildings was not a cause of the loss here, we need not reach the argument, relied upon by the motion court, that the law or ordinance exclusion applies only to losses caused by governmental orders issued as a result of deterioration discovered upon regular inspection and does not apply to losses caused by governmental orders occasioned by sudden or catastrophic events (*see, Danzeisen v Selective Ins. Co.*, 298 NJ Super 383, 689 A2d 798). Such a distinction would be of particular import where, unlike the vacate order at issue here, a governmental decree issued after a catastrophic loss actually did contribute to an insured's losses, such as where an order issued after a fire or other catastrophe required repairs or rebuilding to be performed in accordance with new building codes resulting in higher costs than simple replacement would have required (*supra*).

Accordingly, the order of the Supreme Court, Bronx County (Douglas McKeon, J.), entered June 18, 1996, which granted plaintiff's motion for summary judgment and denied defendant's cross motion for summary judgment on the issue of liability, should be affirmed, without costs.

SULLIVAN, J. P., ROSENBERGER and NARDELLI, JJ., concur.

Order, Supreme Court, Bronx County, entered June 18, 1996, affirmed, without costs or disbursements.