[727 NYS2d 64]

SIMPLEXDIAM, INC., Respondent, v MARK E. BROCKBANK, on Behalf of Himself and All Other Underwriters at Lloyd's of London Subscribing to the Primary Slip of a Certain Lloyd's Insurance Policy, et al., Appellants.

First Department, June 5, 2001

**APPEARANCES OF COUNSEL**

*Stanley McDermott, III,* of counsel, New York City (*Piper Marbury, Rudnick & Wolfe, L. L. P.,* attorneys), for respondent.

*Daniel J. Friedman* of counsel, New York City (*Michael K. Gertzer* on the brief; *Abrams, Gorelick, Friedman & Jacobson, P. C.,* attorneys), for appellants.

### OPINION OF THE COURT

SULLIVAN, P. J.

This is an appeal by an excess insurer affording $3.5 million of additional coverage, "excess of $500,000 each and every loss," under a conventional all risks jewelers block insurance policy, from the denial of its motion for summary judgment dismissing the complaint for failure to show a loss in excess of the $500,000 threshold necessary to trigger its obligation to pay. The alleged insurable loss, calculated at $1,687,779, is based on an inventory loss that took place over a nine-month period.

Plaintiff Simplexdiam, Inc. (Simplex), a Manhattan-based wholesale jeweler specializing in diamond rings, pendants, bracelets and chains, was insured under a Lloyd's policy providing an initial $500,000 layer of primary coverage, subject to a $25,000 deductible "each and every loss," underwritten by 12 syndicates, and a further $3.5 million layer of coverage, "excess of $500,000 each and every loss" for losses occurring during the policy term, underwritten by 12 syndicates, many of which also participated in the primary layer. The policy provided coverage against "all risks of loss or damage to the [insured] property arising [from] any cause whatsoever," subject to certain exceptions not relevant here.

Although a policy condition (Clause 5 [Condition M]) excepts from coverage "[u]nexplained loss, mysterious disappearance or loss or damage or shortage disclosed on taking inventory," that condition was deleted and replaced, at Simplex's request, by an endorsement entitled "Clause 5 (Conditions) M," which provided a much narrower exception. It read, "No claim shall attach for goods missing at stock-taking in respect of which no claim has been previously notified unless the loss be proved by the Assured to be due to a peril covered by the policy."

The facts underlying this lawsuit are as follows. Simplex conducted its last fully reconciled inventory before the loss in question in September 1995. In December 1995 and January 1996, it began to notice that certain items were missing. A "rough inventory" conducted in late January 1996 but never completed was necessarily inconclusive. Toward the end of February 1996, Simplex's president, although believing that the problem was a logistical one, involving perhaps a breakdown in the company's internal inventory procedures and one

not likely to lead to an insurance claim, informed Simplex's long-time insurance broker of his concerns. When it became apparent in mid-March that the missing inventory still could not be explained, Simplex's broker, on March 15 and again on April 3, 1996, notified a representative of the insurers of the problem and the potential for a claim. The insurers thereafter arranged for the appointment of an adjuster to investigate the matter.

In April 1996, Simplex attempted a further inventory, which proved unsatisfactory. With the assistance of forensic accountants retained by the insurers, Simplex conducted two further inventories, one in May and the other in June 1996. The latter, the more comprehensive of the two, was the basis of the detailed itemized claim submitted to the insurers on September 18, 1996. That inventory conducted on June 28, 1996 showed a shortage of 12,814 pieces with an inventory value of $1,892,412. According to the methodology utilized by Simplex, not an issue on this appeal, these items mysteriously disappeared in the nine-month period between the September 1995 and the June 28, 1996 physical inventories. Simplex does not deny that it does not know how the shortage occurred or precisely when the jewelry disappeared.

After receiving Simplex's itemized claim, the insurers' forensic accountants embarked on an extensive 16-month review of Simplex's inventory records. On December 22, 1997, partly as a result of the assessment of the claim by the insurers' accountants, Simplex submitted a revised claim for 12,469 pieces valued at $1,712,779, reflecting its net loss. The insurers have refused to pay any part of the claim, prompting the commencement of this lawsuit. In its complaint, Simplex asserts two causes of action, one for breach of contract and the other for breach of an implied covenant of good faith and fair dealing based, in part, on the insurers' refusal, without a showing that the loss was not covered by the policy, to pay the claim.

In their answer, the insurers pleaded four affirmative defenses including that the loss claimed is due to "sabotage, theft, conversion or other act or omission of a dishonest character" on the part of Simplex or its employees, an exclusion under the policy. Although lack of timely notice of claim under another policy provision is asserted as an affirmative defense, the limited coverage exception for inventory loss contained in the substituted Clause 5 based on prior notification is not pleaded as a defense to the claim. Nor was it the basis of the summary judgment motion. As noted, Simplex did give prior notice of the

possibility of a stock shortage before its inventory loss was determined. Thus, the "unexplained loss" or "mysterious disappearance or loss" of Simplex's inventory is not an occurrence excepted from coverage.

The insurers moved for summary judgment on three grounds, only one of which, Simplex's alleged inability to establish that it has sustained a loss that exceeds the $25,000 deductible requirement of the primary policy or the $500,000 threshold of the excess policy, was raised on this appeal. Simply stated, the insurers argued that Simplex's claim consists of an unknown number of multiple "losses" or of an unknown number of multiple "occurrences," the extent and details of which Simplex would be unable to prove. Thus, Simplex could not prove in the case of each and every loss that the $25,000 deductible was exhausted so as to qualify for coverage under the primary layer of insurance. Similarly, the excess insurers argued that Simplex would be unable to show that the $500,000 threshold had been reached for each and every one of its multiple losses. In response, Simplex argued that it had submitted a single claim for the "unexplained loss" or "mysterious disappearance or loss" of the missing inventory.

Finding that there were issues of fact with respect to the timeliness of Simplex's notification of claim and as to its lack of cooperation in the insurers' investigation, the other two issues raised by the insurers' summary judgment motion, the IAS court denied the motion. The court also held, without elaboration, that "[t]he remainder of [the insurers'] contentions regarding the deductibility threshold have been considered, and are found to be insufficient grounds for summary judgment." The insurers limited their notice of appeal to "the issue of the * * * threshold." Subsequent to the filing of the insurers' brief, Simplex settled its claim against the primary insurers for $477,500, rendering academic the issue as to the application of the $25,000 deductible for each and every loss under the primary layer of coverage. The issue as to the application of the $500,000 threshold for each and every loss as it applies to the excess layer of coverage remains an open issue on appeal, the excess insurers taking the position that Simplex cannot meet its burden of showing that any of the losses for which it seeks indemnification reaches the excess policy's $500,000 threshold for "each and every loss."

It is axiomatic that the insured has the burden to show that the loss for which it seeks indemnification is covered. (*Lavine v Indemnity Ins. Co.*, 260 NY 399, 410; *Throgs Neck Bagels v GA*

*Ins. Co.*, 241 AD2d 66, 70-71.) In order to recover under an all risks policy, the insured must show a "fortuitous" loss of the covered property. (*Vasile v Hartford Acc. & Indem. Co.*, 213 AD2d 541; *In re Balfour MacLaine Intl.*, 85 F3d 68, 77 [2d Cir].) To justify an award of damages, the insured must prove the nature, extent and amount of its loss under the policy to a reasonable degree of certainty. (*Harbor House Condominium Assn. v Massachusetts Bay Ins. Co.*, 915 F2d 316 [7th Cir].)

The excess insurers' argument is grounded in the assertion that Simplex does not know how the alleged shortage occurred, if the shortage of all units occurred in the same manner, whether any single person or multiple individuals were responsible for the loss, the number of occurrences, where the units disappeared, and how many units disappeared at one time. This is undisputed. Despite an extensive investigation over the course of several years, the details as to how and when the jewelry found missing at the taking of inventory came to be lost is still unknown. That circumstance, however, is no defense to Simplex's claim. The loss, notwithstanding that it is "unexplained" and "mysterious," is the very risk that the insurers agreed to cover when the original Condition (M), which excepted such loss from coverage, was deleted and replaced by the endorsement known as "Clause 5 (Conditions) M." The latter covers "goods missing at stock-taking" as long as notice of the claim has been previously given. As already indicated, notice of the possibility of an inventory loss was given here and the excess insurers do not claim otherwise. As a matter of fact, the insurers acted on such notice and engaged an adjuster to investigate the matter.

By arguing that each item of missing jewelry constitutes a separate and discrete loss and that because Simplex cannot explain the circumstances of each occurrence it cannot prove a claim above the excess threshold, the excess insurers totally ignore "Clause 5 (Conditions) M" and would, in effect, re-write the policy by reinstating the policy conditions' exception for "[u]nexplained loss, mysterious disappearance or loss or damage or shortage disclosed on taking inventory." This they cannot do. An insurance contract should not be read so that its provisions are rendered meaningless. (*County of Columbia v Continental Ins. Co.*, 83 NY2d 618, 628.) "[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so 'in clear and unmistakable' language." (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311, quoting *Kratzenstein v Western Assur. Co.*, 116 NY 54, 59.) The policy

at issue contains no exceptions excluding unexplained loss or mysterious disappearance from coverage.

Moreover, in pressing their multiple loss argument, the excess insurers ignore well-settled law. Under an all risks policy an insured "need not prove the cause of the loss" (*In re Balfour MacLaine Intl.*, *supra*, 85 F3d at 77) and "is not bound to go further and prove the exact nature of the accident or casualty which, in fact, occasioned [the] loss" (*id.* at 77-78 [citation omitted]). "The very purpose of an all risks policy is to protect the insured in cases where it is difficult to explain the disappearance of the property; thus, the insured need not establish the cause of the loss as part of its case." (*Great N. Ins. Co. v Dayco Corp.*, 637 F Supp 765, 777, citing *Atlantic Lines v American Motorists Ins. Co.*, 547 F2d 11, 13 [2d Cir].)

The excess insurers' argument that, in cases of unexplained loss or mysterious disappearance, the burden is on the insured to identify the number of occurrences and the amount of loss per occurrence finds no support in the precedents. Were such an argument accepted, it would render coverage for such risks as unexplained loss, mysterious disappearance or inventory shortage for the most part illusory. Thus, we hold that for purposes of determining the $500,000 threshold, Simplex sustained one loss as a result of the inventory shortages for which it has submitted a $1,712,779 claim.

Accordingly, the order of the Supreme Court, New York County (Barry Cozier, J.), entered September 6, 2000, which denied defendant Robin Calquhour Duncan Todd's motion for summary judgment dismissing the complaint, should be affirmed, with costs and disbursements.

MAZZARELLI, ELLERIN, LERNER and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered September 6, 2000, affirmed, with costs and disbursements.