OPINION OF THE COURT
William J. Giacomo, J.
*1043 Factual and Procedural Background
In 1976 plaintiffs, Mitchel and Constance Flaum, purchased at auction from Sotheby’s Parke-Bernet a “Renoir” painting for $50,000 which has hung in their primary residence ever since. The Renoir is currently owned by plaintiff Trust under the Will of Erna Stern for the Benefit of Constance Flaum.
Since 2005, the painting has been insured by a rider to the plaintiffs’ Chubb Group of Insurance Companies homeowner’s insurance policy under a “Valuable Articles” endorsement. Defendant Great Northern Insurance Company is one of Chubb’s affiliates and is the entity that issued plaintiffs’ policy. The policy is renewable annually for a premium of $3,507 and covers the Renoir as well as other valuable articles. For insurance purposes, the Renoir was valued at $350,000. The policy was last renewed on February 17, 2008 for a period of one year.
Sometime in the spring of 2008, plaintiffs sought to sell the Renoir at Christie’s auction house. After Christie’s sent the Renoir to Paris for review, Christie’s declined to accept the Renoir for sale. According to Mitchel Flaum, a Christie’s employee told him the painting was rejected because it was a forgery, but that unnamed employee refused to state that in writing. (See Flaum examination before trial at 39, lines 9-21.) However, in the past, a prominent Renoir authority, the Daubervilles, gave Mitchel Flaum verbal confirmation that the painting was authentic. They too refused to put that assessment in writing. (See Flaum examination before trial at 42-44.)
Accepting the rejection by Christie’s of the Renoir for sale as a finding that the painting was a forgery, plaintiffs placed a $525,000 claim with Great Northern for the “loss” of value of the painting. On March 11, 2009, plaintiffs were notified that their claim was denied on the ground that they had “not sustained a physical loss” under the terms of the insurance agreement.
Plaintiffs commenced this action in April 2009 seeking damages for breach of contract for defendant’s refusal to cover their loss with respect to the “Renoir.” (Defendants answered in July 2009.)
Great Northern now moves for summary judgment dismissing the complaint. It claims that the loss suffered by plaintiffs because their Renoir is a forgery is not a covered loss under the terms of their homeowner’s insurance policy. Great Northern *1044 contends that plaintiffs’ policy covers only “all risk of physical loss” providing such loss occurred during the policy period. According to Great Northern, plaintiffs have not suffered a “physical loss.” In fact, the Renoir still hangs in their residence. Further, to the extent that plaintiffs claim a loss due to fraud, such loss is not a physical loss. Moreover, even assuming that the alleged fraud resulted in a physical loss, the loss occurred in 1976 when plaintiffs purchased the forged Renoir, long before the issuance of this policy.
In support of its motion, Great Northern submits the affidavit of Karen A. Moore, a Great Northern property claim examiner, who states that the loss experienced by plaintiffs is not a physical loss under the terms of the policy and, therefore, coverage was properly denied.
Great Northern also relies on the deposition testimony of Mitchel Flaum, who acknowledged that the painting still hangs in his home in substantially the same condition as it was when it was purchased and that it was never lost, stolen or damaged. Great Northern also notes that plaintiffs fail to offer conclusive proof that their painting is, in fact, a forgery.
In opposition, plaintiffs contend that there has been a physical loss to the painting due to the loss of the value of the painting. Plaintiffs argue there was physical loss because their painting is physically no longer a Renoir, i.e., the physical properties of the painting were not as represented upon purchase. Moreover, they contend that the policy does not specifically exclude from “covered losses” losses due to a forgery or fraud. Plaintiffs note that defendants agreed to accept and insure the painting as a Renoir, which it is not. Thus, there has been a loss. Plaintiffs contend further that Great Northern’s use of the “physical loss” language in an “all risk” policy is “deceptive and cagey” and a means to avoid its obligation to cover this loss. Finally, plaintiffs contend that since the forgery was discovered in 2008 while the policy was in force, the discovery is an occurrence during the term of the policy.
Discussion
It is a well-established principle that a policyholder bears the initial burden of showing that the insurance contract covers the loss. (See Roundabout Theatre Co. v Continental Cas. Co., 302 AD2d 1 [1st Dept 2002]; Morgan Stanley Group Inc. v New England Ins. Co., 225 F3d 270, 276 [2d Cir 2000]; Chase Manhattan Bank v Travelers Group, 269 AD2d 107, 108 [1st Dept 2000]; Simplexdiam, Inc. v Brockbank, 283 AD2d 34, 37 *1045 [1st Dept 2001].) Here, plaintiffs do not conclusively establish that their painting is, in fact, a forgery. Thus, it is not even clear that a loss has even occurred.
Nevertheless, assuming the Renoir is a forgery, plaintiffs fail to show how their loss is covered under the terms of their insurance policy’s “Valuable Articles Coverage” rider.
The “Valuable Articles Coverage Summary” provides, in relevant part: “This policy provides you with coverage against physical loss if your valuable articles are lost, damaged, or destroyed. The kinds of losses that are covered, and any special limits that apply, are explained in detail in the policy.”
The “Valuable Articles Coverage” portion of the policy provides, in relevant part: “In Valuable Articles Coverage, a ‘covered loss’ includes all risk of physical loss to valuable articles unless stated otherwise or an exclusion applies. Exclusions to this coverage are described in Exclusions.”
The language of the valuable articles coverage clearly and unambiguously states that “all risk of physical loss” is covered under the terms of the policy. Here, however, plaintiffs did not sustain a “physical loss.” There is no dispute that the Renoir still hangs in Mitchel Flaum’s primary residence in substantially the same condition as when it was purchased. In addition, there is no claim that the “Renoir” has been lost, damaged, or destroyed.
Plaintiffs rely heavily on Murray Oil Prods. v Royal Exch. Assur. Co. (21 NY2d 440 [1968]) to establish that they suffered a physical loss. However, in Murray Oil, the plaintiff did suffer an actual “physical loss” of oil stored with a bailee. In Murray Oil, one month after plaintiff delivered 300,600 pounds of vegetable oil to a storage company for storage in its tanks, the storage company became insolvent and had insufficient oil in its possession to return all the oil the plaintiff had deposited with it. In that case, the deposits of various bailors were not segregated but were commingled in several large tanks. Therefore, when the plaintiff in Murray Oil attempted to retrieve its deposit, it was 70,000 pounds short. As a result, plaintiff lost 70,000 pounds of oil. In finding that the plaintiff suffered a “physical loss” under the terms of plaintiffs insurance policy the Court of Appeals stated “the [insured bailee] . . . was not able to deliver the oil due to a physical loss.” There simply was not 70,000 pounds of oil available for return to plaintiff. (Id. at 445.)
*1046 Conversely, here, plaintiffs did not lose the painting. It is still physically present in their home. To the extent plaintiffs contend that they suffered a physical loss as a result of the forgery because the painting is not “physically” a Renoir, such a claim is without merit since under that theory the painting was never “physically” a Renoir;[1] therefore, no loss occurred.
Further, even assuming that the forgery or fraud resulted in a physical loss, the loss occurred in 1976 when plaintiffs purchased the forged Renoir, not when the forgery was discovered.[2] As defendants correctly note, the 1976 purchase occurred decades before the painting was insured by defendants. Accordingly, there is no coverage for a loss outside the coverage dates. (See Rescott v American Cas. Co. of Reading Pa., 8 AD3d 1095 [4th Dept 2004].)
Based on the foregoing, defendants’ motion for summary judgment dismissing the complaint is granted.

. The court notes that the problem with the Renoir is more akin to a “latent defect” in that the painting’s defect, to wit, the alleged forgery, was not discovered until well after the painting’s purchase and upon discovery the defect rendered the painting valueless. Nevertheless, plaintiffs have still not sustained a covered loss as a “latent defect” is specifically excluded from coverage under the “[g]radual or sudden loss” exclusion of the valuable articles rider to plaintiffs’ homeowner’s policy.

. It is reasonable to assume that the painting was assessed and/or examined to determine its true value when purchased.