# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 15, 2013

Lyle W. Cayce
Clerk

No. 12-30651

LOUISIANA GENERATING L.L.C.; NRG ENERGY INCORPORATED,

                    Plaintiffs-Appellees - Cross-Appellants

v.

ILLINOIS UNION INSURANCE COMPANY,

                    Defendant-Appellant - Cross-Appellee

--------------------------------------------------------------------------

ILLINOIS UNION INSURANCE COMPANY,

                    Plaintiff-Appellant - Cross-Appellee

v.

NRG ENERGY INCORPORATED; LOUISIANA GENERATING L.L.C.,

                    Defendants-Appellees - Cross-Appellants

_____

Cons w/ 12-30877

LOUISIANA GENERATING, L.L.C.; NRG ENERGY, INCORPORATED,

                    Plaintiffs-Appellees - Cross-Appellants

v.

ILLINOIS UNION INSURANCE COMPANY,

                    Defendant-Appellant - Cross-Appellee

No. 12-30651

--------------------------------------------------------------------------------------

ILLINOIS UNION INSURANCE COMPANY,

Plaintiff-Appellant - Cross-Appellee

v.

NRG ENERGY, INCORPORATED; LOUISIANA GENERATING, L.L.C.;

Defendants-Appellees - Cross-Appellants

_____

Cons w/ 12-30879

LOUISIANA GENERATING, L.L.C.; NRG ENERGY, INCORPORATED,

Plaintiffs-Appellees

v.

ILLINOIS UNION INSURANCE COMPANY,

Defendant-Appellant

--------------------------------------------------------------------------------------

ILLINOIS UNION INSURANCE COMPANY,

Plaintiff-Appellant

v.

NRG ENERGY, INCORPORATED; LOUISIANA GENERATING, L.L.C.;

Defendants-Appellees

---

Appeals from the United States District Court
for the Middle District of Louisiana

---

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.

2

JAMES E. GRAVES, JR., Circuit Judge:

This case concerns whether Illinois Union Insurance Company ("ILU") has a duty to defend Louisiana Generating LLC ("LaGen") in an underlying suit filed against it by the Environmental Protection Agency ("EPA") and the Louisiana Department of Environmental Quality ("LDEQ") for alleged Clean Air Act ("CAA") and state environmental law violations. The district court held that under the insurance policy at issue, there is a duty to defend. We affirm.

## I. Factual and Procedural Background

The underlying suit in this duty to defend case between LaGen and ILU revolves around Big Cajun II ("BCII"), a coal-fired electric steam generating plant owned by LaGen in Louisiana. In February 2005 and December 2006 the EPA sent LaGen Notices of Violation ("NOVs") alleging that certain major modifications performed without a permit at BCII in 1998 and 1999 caused net emissions increases in violation of the CAA. In January 2009, NRG Energy, LaGen's parent, purchased a Custom Premises Pollution Liability Insurance Policy ("the policy") from ILU to cover a large number of its facilities, including BCII. The effective date of the policy is January 22, 2009.

On February 18, 2009, the EPA filed the underlying suit over the modifications made to BCII, asserting violations of the CAA and Louisiana environmental laws. LDEQ intervened in the suit, asserting essentially identical allegations and claims. The suit alleges that the previous owner of BCII did work on the plant that increased certain emissions which under applicable law would be considered "major modifications" and would have required a Prevention of Significant Deterioration of Air Quality permit ("PSD permit") before being completed. The suit also alleges that the plant modifications failed to employ best available control technology ("BACT") to limit emissions, as required by the CAA and Louisiana law. The complaints allege that since acquiring BCII, LaGen has continued to operate the plant without

seeking a PSD permit for the modifications. As a result, the complaints assert, BCII has emitted excess amounts of regulated pollutants into the air.

The parties primarily dispute whether any relief sought by the EPA and LDEQ is potentially covered by the policy. The underlying EPA suit sets forth several prayers for relief which ask the district court to:

1. Permanently enjoin the defendant from operating Units 1 and 2 of the Big Cajun II Power Plant, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order the defendant to remedy its past violations by, among other things, requiring the defendant to install and operate, as appropriate BACT at Units 1 and 2 of the Big Cajun Power Plant, for each pollutant subject to regulation under the Clean Air Act;

3. Order the defendant to apply for permits that are in conformity with the requirements of the PSD and the Louisiana Title V Operating Permits program;

4. Order the defendant to conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and report the results of these audits to the United States;

5. Order the defendant to surrender emission allowances or credits to offset and mitigate the illegal emissions under the PSD and Louisiana Title V Operating Permits program;

6. Order the defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

7. Assess a civil penalty against the defendant of up to $27,500 per day for each violation of the Clean Air Act and applicable regulations which occurred between January 31, 1997 and March 15, 2004; $32,500 for each violation that occurred

between March 15, 2004 and January 12, 2009; and $37,500 for each violation occurring after January 12, 2009;

8.	Award the United States its costs of this action; and,

9.	Grant such other relief as the Court deems just and proper.

As we discuss below, on appeal ILU argues that none of the prayers for relief are covered, while LaGen argues that there is coverage for paragraphs 5, 6 and 7 of the EPA's prayer for relief.

LaGen sought coverage from ILU under the policy for legal fees associated with the underlying EPA suit, and ILU denied that the EPA suit was covered by the policy. LaGen filed suit in Louisiana federal court seeking a declaratory judgment that ILU has a duty to defend and indemnify LaGen in the EPA suit.[1] The district court bifurcated the trial between the duty to defend and the duty to indemnify. Both parties moved for partial summary judgment on the issue of the duty to defend, asserting that the policy was clear as a matter of law. In a January 30, 2012 order, the district court granted summary judgment for LaGen with regard to the duty to defend and denied the motion for summary judgment filed by ILU. The district court held that ILU failed to prove that there was no possibility the claims in the underlying EPA suit would be covered and thus had a duty to defend.

ILU moved for a new trial or alternatively for certification of the interlocutory ruling for immediate appeal pursuant to 28 U.S.C. § 1292(b), or in the further alternative, to certify the ruling for immediate appeal as a final judgment pursuant to Federal Rule of Civil Procedure 54(b). In a May 15, 2012 order, the district court treated that motion as one for reconsideration under Rule 54(b) and denied it. The district court granted the motion for certification

---

[1] ILU had previously instituted a separate suit seeking a declaratory judgment that it had no duty to defend or indemnify under the policy in New York federal court. The matters were consolidated in the Middle District of Louisiana.

of both the district court order and the denial of reconsideration pursuant to § 1292(b). ILU filed a petition in this court seeking permission to appeal the interlocutory orders pursuant to § 1292(b), and LaGen filed a cross-petition for permission to appeal the district court's holding that costs relating to injunctive relief were not covered by the policy. We granted both petitions for permission to appeal.[2]

## II. Discussion

The only issue decided by the district court on summary judgment was the duty to defend. Thus, the only question on appeal concerns whether the district court correctly held that ILU has a duty to defend LaGen in the underlying suit filed by the EPA and LDEQ.

### A.     Standard of Review and Choice of Law

This court reviews the district court's grant of summary judgment de novo, applying the same legal standards as the district court. Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co., 602 F.3d 677, 681 (5th Cir. 2010). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. The district court's interpretation of an insurance contract is a question of law subject to de novo review. Id. Additionally, a court of appeals is not limited to a district court's reasons for its decision, but may affirm a district court ruling "on any ground supported by the record." See Ballew v. Cont'l Airlines, Inc., 668 F.3d 777, 781 (5th Cir. 2012).

The policy contains a choice of law clause specifying that "All matters arising hereunder including questions relating to the validity, interpretation,

---

[2] The parties also pursued other avenues of appeal, resulting in multiple appeals from the same two district court orders. ILU previously filed a motion to dismiss LaGen's cross-appeal in one of the cases, No. 12-30651, disputing the timeliness of LaGen's cross-appeal in that case. There is no dispute that LaGen's petition for cross-appeal was timely in No. 12-90053, the case in which this court granted permission to both parties to appeal pursuant to § 1292(b), and the multiple appeals have been consolidated. Thus, ILU's motion to dismiss LaGen's cross-appeal is now denied as moot.

performance, and enforcement of this Policy shall be determined in accordance with the law and practices of the State of New York." Thus, New York law governs the interpretation of the policy.

B.     Coverage for Claims and Remediation Costs

On appeal, ILU argues that it has no duty to defend because the underlying EPA suit does not seek any form of relief that potentially falls within the policy's coverage. ILU argues that the forms of relief covered by the policy–including relief for property damage and remediation costs–are unavailable to the EPA as a matter of law because the CAA only allows the EPA to seek prospective relief and does not allow the EPA to seek compensatory damages. ILU further asserts that the policy excludes coverage for any injunctive relief. LaGen responds by arguing not only that the underlying suit does assert a claim for property damage and does seek remediation costs as defined by the policy, which is not limited to compensatory damages, but also that the district court erred when it stated that injunctive relief is excluded from the policy's coverage.

In New York, whether there is a duty to defend is determined by comparing the allegations in the underlying complaint to the terms of the policy. See BP Air Conditioning Corp. v. One Beacon Ins., 871 N.E.2d 1128, 1131 (N.Y. 2007); Fitzpatrick v. Am. Honda Motor Co., 575 N.E.2d 90, 91-92 (N.Y. 1991). An insurance policy must be read as a whole in order to determine "its purpose and effect and the apparent intent of the parties." See Murray Oil Prods., Inc. v. Royal Exch. Assurance Co., 235 N.E.2d 762, 764 (N.Y. 1968). When the terms of the policy are clear and unambiguous, they should be given their "plain and ordinary meaning." Teichman v. Cmty. Hosp. of W. Suffolk, 663 N.E.2d 628, 630 (N.Y. 1996). In New York, "it is well settled that an insurer's duty to defend [its insured] is exceedingly broad and an insurer will be called upon to provide a defense whenever the allegations of the complaint suggest . . . a reasonable

possibility of coverage." BP Air Conditioning, 871 N.E.2d at 1131 (alterations in original) (internal quotation marks omitted). If a complaint "contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." Id. (quoting Technicon Elecs. Corp. v. Amer. Home Assurance Co., 74 N.Y.2d 66, 73 (N.Y. 1989)); see Fitzpatrick, 575 N.E.2d at 92. Finally, "If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co., 690 N.E.2d 866, 869 (N.Y. 1997).

The policy states that it provides coverage for "Claims, remediation costs, and associated legal defense expenses . . . as a result of a pollution condition" at a covered location.[3] "Claim" in turn is defined as "the assertion of a legal right, including but not limited to a government action(s), suits or other actions alleging responsibility or liability on the part of the insured for. . . property damage, or remediation costs as a result of pollution conditions to which this insurance applies." "Government action" is defined as "action taken or liability imposed by any federal [or] state . . . government agency or body acting under the authority of environmental laws." The policy covers pollution conditions, which it defines in relevant part as "the discharge, . . . dispersal, release, escape, migration, or seepage of any . . . gaseous or thermal irritant, contaminant, or pollutant . . . on, in, into, or upon. . . the atmosphere. . . ." "Property damage" is defined to include, inter alia, "[n]atural resource damages," which in turn is expressly defined as including "injury to . . . air." "Remediation costs" is defined as "reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize pollution conditions to the extent required by environmental law."

---

[3] Internal quotation marks have been omitted from quotations of the policy throughout this opinion.

Reading all of these provisions together and giving them their plain meaning, the underlying EPA suit includes allegations and prayers for relief that could potentially result in covered remediation costs. Government agencies acting under the authority of environmental laws allege that LaGen violated those laws, resulting in increased emissions of pollutants into the atmosphere, and seek to require LaGen to mitigate and remediate those emissions. The EPA complaint clearly alleges a covered "pollution condition" at BCII when it asserts that "significant amounts of $NO_x$ and $SO_2$ pollution each year have been, and still are being, released [from BCII] into the atmosphere." The policy states that ILU "agrees to pay . . . [c]laims, remediation costs, and associated legal defense expenses" as a result of a pollution condition. "Claims" and "remediation costs" are thus two bases for coverage under the policy. In addition, a covered "claim" includes "government action(s) . . . alleging responsibility or liability on the part of [LaGen] for. . . remediation costs as a result of" a pollution condition. "Remediation costs" are thus unquestionably covered, whether they are the relief sought by a claim or whether they are incurred independent of a claim, and ILU agreed to pay "associated legal defense expenses" with regard to either situation. "Remediation costs" are defined very broadly to include expenses incurred to redress pollution in compliance with environmental law, including, inter alia, costs associated with investigating, mitigating or abating pollution. This language providing coverage for remediation costs potentially covers the multiple prayers for relief in the EPA complaint which seek to require LaGen to mitigate, offset and remediate the alleged past pollution, including the requests that the court "[o]rder the defendant to surrender emission allowances or credits to offset and mitigate the illegal emissions," and "[o]rder the defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged...." These requests for mitigation, offsetting and remediation suggest a

reasonable possibility of coverage under the policy. See BP Air Conditioning, 871 N.E.2d at 1131. Because part of the suit is "potentially within the protection purchased, the insurer is obligated to defend." Id. (quoting Technicon Elecs. Corp., 74 N.Y.2d at 73).

At oral argument, counsel for LaGen clarified that LaGen was not asserting that costs associated with installation of government mandated equipment and other actions taken solely to bring the plant into compliance are covered under the policy. However, contrary to ILU's arguments, installation of the required equipment and application for the required CAA permits are not the only relief sought by the EPA, nor are they the only relief that could eventually be ordered by a court to remediate, offset or mitigate the past emissions. In addition to and distinct from installation of equipment and application for permits, part of what the EPA complaint seeks is remediation of past pollution, and under the clear definitions in the policy, costs associated with that remediation could be covered by the policy. At oral argument, counsel for ILU conceded that if LaGen engaged in voluntary action to remediate past pollution, those costs would be covered by the terms of the policy. Nothing in the plain language of the policy provides that those same costs are not covered if they are done as a result of a lawsuit filed by a government enforcement agency.

### C. Coverage for Injunctive Relief

We also reject ILU's argument that injunctive relief is excluded from coverage by the Fines and Penalties exclusion. The Fines and Penalties provision excludes coverage for "Payment of criminal fines, criminal penalties, punitive, exemplary or injunctive relief." ILU argues that any costs associated with injunctive relief ordered by a court in the underlying EPA suit are excluded by the reference to "injunctive relief." LaGen argues that in construing the term "injunctive relief," the term must be read according to the rule that "a series of

specific words describing things or concepts of a particular sort are used to explain the meaning of a general one in the same series." See 242-44 E. 77th St., LLC v. Greater New York Mut. Ins. Co., 815 N.Y.S.2d 507, 510 (N.Y. App. Div. 2006) (quoting Matter of Riefberg, 58 N.Y.2d 134, 141 (N.Y. 1983)); Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc., 84 N.Y.2d 430, 438 (N.Y. 1994) (applying this canon of construction to an exclusion in an insurance policy). Read in context, LaGen argues that the exclusion covers only types of relief that are akin to punitive fines and penalties, and cannot exclude coverage for all injunctive relief.

Under New York law, "policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer." Belt Painting Corp. v. TIG Ins. Co., 795 N.E.2d 15, 17 (N.Y. 2003). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Cont'l Cas. Co. v. Rapid-Am. Corp., 609 N.E.2d 506, 512 (N.Y. 1993); Belt Painting Corp., 795 N.E.2d at 17; see Frontier Insulation, 690 N.E.2d at 868-69 (noting that insurer bears "heavy burden" in negating coverage by an exclusion); Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 671 N.Y.S.2d 66, 71 (N.Y. App. Div. 1998) (holding that to negate coverage under an exclusion, insurer must show that its construction is the "only construction that [could] fairly be placed thereon"). Further, an insurer may not construe a policy exclusion in a way that would "render the underlying coverage nugatory in a host of cases where it would reasonably be expected to apply." Throgs Neck Bagels, 671 N.Y.S.2d at 70.

Applying these standards, ILU cannot show that its interpretation of the exclusion is the only possible reasonable construction, as it must do to negate coverage. See Cont'l Cas. Co., 609 N.E.2d at 512. Reading the policy as a whole, including construing the exclusion narrowly, see Belt Painting Corp., 795 N.E.2d

at 17, LaGen's interpretation of the Fines and Penalties exclusion as applying only to criminal and punitive fines and penalties is a reasonable reading of the exclusion. Conversely, under ILU's interpretation, the policy would illogically provide coverage for "remediation costs" but would exclude coverage if that remediation is required by a court order. Further, the term "environmental law" is defined in the policy as including not only "any federal, state, [or] local laws" governing liability for pollution, but also expressly includes "governmental, judicial or administrative orders . . . governing the liability or responsibilities of the insured with respect to pollution conditions." The policy, then, expressly provides that it covers remediation costs to mitigate pollution conditions to the extent required by judicial and administrative orders. ILU's interpretation of the "injunctive relief" language of the exclusion as excluding costs associated with all injunctive relief clearly and directly conflicts with these basic, express terms of the policy.

Further, if the Fines and Penalties exclusion is a complete bar for coverage of costs associated with injunctive relief, the exception would potentially swallow the coverage afforded by the policy. The policy would not cover claims under major federal environmental statutes, such as the CAA and the Clean Water Act, when they are being enforced by the EPA or state agencies seeking injunctive relief to mitigate and remediate past pollution. Again, in New York, an insurer may not construe a policy exclusion in a way that would "render the underlying coverage nugatory in a host of cases where it would reasonably be expected to apply." Throgs Neck Bagels, 671 N.Y.S.2d at 70. Under ILU's interpretation of the Fines and Penalties exclusion, the policy would provide little coverage for some of the major types of environmental law liability that a reasonable policyholder would expect; thus, it must be rejected. See Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co., 34 N.Y.2d 356, 361 (N.Y. 1974). The fact that the remediation of past pollution sought by the EPA may result only in orders for

12

injunctive relief does not disturb our conclusion that the EPA's claims in the underlying suit could result in covered remediation costs.

D.   The Timing of the Suit

Lastly, ILU argues that it has no duty to defend because the claims were "first made" when the EPA first issued the NOVs with regard to BCII, which was before the effective date of the policy, rather than when the EPA filed suit.

As we have said, when the terms of the policy are clear and unambiguous, they should be given their plain meaning.  Teichman, 663 N.E.2d at 630.  The policy language with regard to this issue is clear.  The policy provides coverage for claims or remediation costs as a result of pollution conditions "provided the claim is first made, or the insured first discovers such pollution condition during the policy period . . . ."  The policy further states that, "Any pollution conditions specifically referenced, or identified in documents listed, on the Schedule of Known Conditions Endorsement are deemed to be first discovered during the policy period."  It is not disputed that the NOVs concerning the pollution condition at BCII were identified on the Schedule of Known Conditions Endorsement.  It is difficult to determine what the purpose of listing the NOVs relating to BCII on the endorsement would be if not to include claims and remediation costs relating to that known pollution condition within the policy's coverage.  Thus, according to the plain language of the policy, the "pollution condition" at BCII identified in the NOVs is "deemed to be first discovered during the policy period" and potential remediation costs associated with that pollution condition are covered by the policy.

E.   Civil Penalties

The parties also dispute whether the CAA civil penalties sought by the EPA are covered by the policy.  The district court held that the civil penalties are potentially covered and found a duty to defend partly on that basis.  ILU argues that civil penalties, like punitive damages, cannot be indemnified under New

York law as a matter of public policy. LaGen argues first that Louisiana law applies to this question, and second that civil penalties are insurable under New York law.

Because of the express choice of law provision in the policy, which provides that "All matters arising hereunder relating to the validity, interpretation, performance, and enforcement of this Policy shall be determined in accordance with the law and practices of the State of New York," we find that this issue is governed by New York law. We are not persuaded by LaGen's argument that the language found in the Fines and Penalties exclusion, which provides that the exclusion "will not apply to coverage for punitive damages where such coverage is allowable by law" is a separate choice of law provision governing punitive damages. The state cases cited by LaGen in support of this proposition did not involve a general express choice of law provision, as the contract at issue does, and are thus inapposite. See Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois, 568 N.E.2d 9, 12 (Ill. 1990) (also noting that the relevant language was "not contained" in an exclusion, but was included in a separate endorsement extending the policy to punitive damages); United States Gypsum Co. v. Admiral Ins. Co., 643 N.E.2d 1226, 1250-51 (Ill. Ct. App. 1994) (adopting the holding of Int'l Surplus Lines).

However, whether civil penalties can be indemnified by insurance appears to be an unsettled question of New York state law. The New York Court of Appeals has recognized "the continuing and unabated force of our public policy precluding indemnification for punitive damages. . . ." Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 319 (N.Y. 1994). It is not clear whether New York law would distinguish between punitive damages and CAA civil penalties in this context. See State v. Travelers Indem. Co. of Rhode Island, 508 N.Y.S.2d 698, 701 (N.Y. App. Div. 1986) (distinguishing civil penalties and strict liability damages from punitive damages); Zurich Ins. Co., 84 N.Y.2d at

316-17 (defining when New York considers damages to be "punitive"); State v. INA Underwriters Ins. Co., 507 N.Y.S.2d 112, 115 (N.Y. Sup. Ct. 1986) (noting that an insurer could not be directly liable for civil penalties under New York oil spill law, but might be liable for indemnification according to the terms of an insurance policy).

We have already held that there is a duty to defend because the EPA's and LDEQ's claims may potentially result in covered remediation costs. New York law provides that if any claim in an action is potentially covered, the insurer must defend the entire suit. See Frontier Insulation, 690 N.E.2d at 869. Because we find that ILU has a duty to defend on other grounds, we decline to decide on interlocutory appeal whether New York law allows indemnification for CAA civil penalties.

## III. Conclusion

For the above-stated reasons, we AFFIRM the district court's holding that under the policy ILU has a duty to defend LaGen in the underlying EPA and LDEQ suit and REMAND for further proceedings consistent with this opinion. ILU's motion to dismiss LaGen's cross-appeal is DENIED as moot.