■ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Plaintiff, and ACE INA INSURANCE et al., Appellants, v TRANSCANADA ENERGY USA, INC., et al., Respondents. TC RAVENSWOOD, LLC, Respondent, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Also Known as AIG, et al., Defendants, and ACE INA INSURANCE et al., Appellants. [61 NYS3d 4]—

Amended order, Supreme Court, New York County (Barbara Jaffe, J.), entered March 21, 2016, which, to the extent appealed from, denied ACE INA Insurance's and Arch Insurance Company's (collectively, the insurers) consolidated motions for partial summary judgment for a declaration in their favor, and granted TransCanada Energy USA, Inc., TC Ravenswood Services Corp., and TC Ravenswood LLC's (collectively, TransCanada) motion for partial summary judgment declaring that the subject insurance policy covers the September 12, 2008 breakdown of turbine generator Unit 30 at the Ravenswood electrical power facility, in addition to TransCanada's claim for loss of capacity sales after May 28, 2009, unanimously affirmed, with costs. Appeal from original order, same court and Justice, entered March 4, 2016, unanimously dismissed, without costs, as superseded by that from the amended order.

TransCanada makes a claim under the subject insurance policy for coverage of losses that resulted when a power-generating turbine (Unit 30) at its Ravenswood Generating Station in Long Island City was taken out of operation on September 12, 2008 (during the policy period), due to excessive vibrations. The vibrations were found to have been caused by a

nine-inch crack in Unit 30's rotor. Unit 30 functioned according to an alarm and trip system, with protocols established when the policy was underwritten. According to these protocols, Unit 30 was functioning properly until September 12, 2008, notwithstanding that the crack had begun to form before the inception of the policy period; moreover, it is undisputed that the crack had continued to lengthen during the policy period. Therefore, the loss occurred on September 12, 2008—the discrete event of physical loss or damage triggering the time element coverage—when the unit was taken out of operation due to the excessive vibrations, and TransCanada's property sustained a physical loss or damage during the policy period. Since there is no provision in the policy that excludes physical loss or damage originating prior to the commencement of the policy period, the policy covers the loss (*see Labate v Liberty Mut. Fire Ins. Co.*, 19 AD3d 652, 653-654 [2d Dept 2005]).

Further, although "business interruption losses experienced by the insured beyond the time needed to physically restore the destroyed or damaged property are not recoverable" (44 Am Jur 2d, Insurance § 1549; *see also Retail Brand Alliance, Inc. v Factory Mut. Ins. Co.*, 489 F Supp 2d 326, 330-331 [SD NY 2007]; *Royal Indem. Co. v Retail Brand Alliance, Inc.*, 33 AD3d 392 [1st Dept 2006], *lv denied* 8 NY3d 813 [2007], *lv denied* 11 NY3d 705 [2008]), the cited cases, which are retail cases, are not applicable here. Because Unit 30 was not available to generate electricity from September 12, 2008 through May 18, 2009, TransCanada was unable to earn future capacity revenues that were attributable to the policy's period of liability. Both TransCanada's and the insurers' experts agreed that the New York Independent System Operator paid Trans-Canada capacity revenues for Unit 30's availability to generate between September 12, 2008 and May 18, 2009, starting in May 2009 and ending in April 2011, and that such a loss calculation was "reasonable" (*compare Gates v State Auto. Mut. Ins. Co.*, 196 SW3d 761, 762 [Tenn Ct App 2005], *lv denied* 2006 Tenn LEXIS 502 [2006]).

The time element exclusion at issue provides no coverage for "[a]ny increase in loss due to retroactive or future changes in the Capacity Payments or Bonus Payments that were in effect at the time of loss," which are defined to mean those payments that become payable to the insured "in return for attaining or exceeding certain production levels." It is undisputed that TransCanada is a regulated entity that sells at actual production capacity, not when it attains or exceeds specified production levels. Therefore, the insurers have not met their burden

of establishing that "the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation and applies in the particular case, and that its interpretation of the exclusion is the *only* construction that could fairly be placed thereon" (*Throgs Neck Bagels v GA Ins. Co. of N.Y.*, 241 AD2d 66, 71 [1st Dept 1998] [citations, internal quotation marks and brackets omitted]). Concur—Friedman, J.P., Andrias, Gische and Webber, JJ. ▮