**HASTINGS DEVELOPMENT, LLC, Plaintiff,**

**v.**

**EVANSTON INSURANCE COMPANY, Defendant.**

No. 14–cv–6203 (ADS)(AKT).

United States District Court, E.D. New York.

Signed Oct. 30, 2015.

Simmons Jannace Deluca, LLP, By: Steven D. Jannace, Esq., Francesco Antonio Savoia, Esq., of Counsel, Hauppauge, NY, for the Plaintiff.

Traub Lieberman Straus & Shrewsberry LLP, By: Eric D. Suben, Esq., Gregory Joseph Perrotta, Esq., of Counsel, Hawthorne, NY, for the Defendant.

## ORDER

SPATT, District Judge.

This a dispute as to whether the Defendant Evanston Insurance Company (the "Defendant") is obligated to indemnify the Plaintiff Hastings Development, LLC (the "Plaintiff") pursuant to a commercial general liability policy for a potential judgment, attorneys' fees, and legal expenses arising from a personal injury lawsuit.

On October 23, 2014, the Plaintiff commenced this action against the Defendant seeking: (i) a declaratory judgment pursuant to 28 U.S.C. § 2201(a) stating that the Defendant is required to indemnify the Plaintiff in the personal injury action; and (ii) consequential, incidental, and punitive

damages arising from what the Plaintiff contends is the Defendant's bad faith conduct in denying insurance coverage to the Plaintiff.

Presently before the Court is (i) a motion by the Defendant pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) to dismiss the complaint in its entirety; and (ii) cross-motion by the Plaintiff for summary judgment pursuant to Fed.R.Civ.P. 56.

For the reasons set forth below, the Court grants in part and denies in part the Defendant's motion to dismiss and grants in part and denies in part the Plaintiff's motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted.

### A. *The Parties*

The Plaintiff is a New York limited liability company whose members are all citizens of New York. (Compl. at ¶ 5.) The record does not make clear the precise nature of the Plaintiff's business.

The Defendant is an Illinois corporation, with its principal place of business in Illinois. (*Id.* at ¶ 8.) It is in the business of providing insurance. (*Id.*)

### B. *The Policy*

#### 1. The Relevant Coverage

Prior to June 29, 2011, the Defendant issued a Commercial General Liability Policy (the "Policy") to the following "Named Insureds": (i) Universal Photonics, Inc. ("UPI"); (ii) JH Rhodes Co., Inc. ("JH Rhodes"); (iii) Facilities Realty Management, LLC ("Facilities Realty Management"); and (iv) the Plaintiff (collectively, the "Named Insureds"). (Compl., Ex. B, Policy Declarations.)

In return for the payment of a $25,000 payment premium, the Defendant provided the Named Insureds "Commercial General Liability Coverage" with a general aggregate limit of $2,000,000 and, as relevant here, a personal injury limit of $1,000,000. (*See id.*)

The Policy provided coverage for the period June 1, 2011 to June 1, 2012 for the "Designated Operations" of the Named Insureds, which are defined by the Policy Endorsements as (i) "Manufacturing and distribution of abrasive and policy products"; and (ii) "Manufacturing and distribution of optics processing equipment." (*See id.*)

Section I (1)(a) of the Policy provides in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.... However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

(*Id.* at § I(1)(a)).

Section V defines "Bodily Injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at § V(4).) "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (*Id.* at § V(18).)

Section I (1)(b) further specifies: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' occurs during the policy period[.]" (*Id.*)

"Occurrence" is defined as an "an accident, including continuous or repeated ex-

posure to substantially the same general harmful conditions." (*Id.* at § V(13).) The "[c]overage territory" is also defined broadly to include, among other regions, any area in the United States. (*See id.*)

## 2. The Employer's Liability Exclusion

The Policy provides for a number of exclusions. As relevant here, there is an exclusion for "Employer's Liability," which is defined as:

'Bodily Injury' to:

(1) An 'employee' of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business[.]

(*Id.* at § II(e)(1)).

However, the Policy also contains an Endorsement that amends the "Employer's Liability" exclusion as follows:

It is hereby understood and agreed that: Employer's Liability under 2. E. Exclusions, Commercial General Liability Coverage Form, Section 1. Coverage, is hereby deleted and replaced by the following, and applies throughout this policy:

This insurance does not apply to any claim, suit, cost or expense arising out of bodily injury to

(1) an employee of the Named Insured arising out of and in the course of employment by any Insured, or while performing duties related to the conduct of the Insured's business, or

(2) the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).

This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury;

And, this exclusion applies whether you have assumed liability under any Insured contract or agreement.

Wherever the word employee appears above, it shall also mean any member, associate, leased worker, temporary worker of, or any person or persons loaned to or volunteering services to, any Named Insured.

(*See id.* at "Employers Liability Exclusion".) The parties do not dispute that the "Employer's Liability" exclusion, as amended by this Endorsement, governs the instant dispute. (*See* Def.'s Rule 56.1 Statement at ¶ 2.)

The preamble of the Policy provides that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."

In addition, the preamble states that the "word 'insured' means any person or organization qualifying as such under Section II—Who Is An Insured."

Section II, in turn, states, "If you are designated in the Declarations as .... [a] limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers." (*Id.* at § II(1)(c)).

Also, of importance, Section IV(7) of the Policy is entitled, "Separation Of Insureds," and states:

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or 'suit' is brought.

(*Id.* at § IV(7),)

Section III of the Policy is entitled, "Limits of Insurances," and refers to the aggregate monetary limits of the Policy set forth in the Declarations, which as discussed earlier, include a $2 million aggregate limit on coverage and a $1 million aggregate limit on coverage for personal injury. (*See id.* at § 3.)

### C. The Cohen Action

On June 26, 2014, Aaron Cohen ("Cohen") commenced an action in the Supreme Court of Nassau County against SWECO, Inc. ("SWECO"), the Plaintiff, UPI, and XYZ Corp. (the "Cohen Action"). (Compl., Ex. A.)

The Cohen Action complaint alleges that on June 29, 2011, Cohen was injured while operating a mixing machine located in a building on 495 West John Street in Hicksville, New York. (*Id.* at ¶ 7.) It is undisputed that Cohen was an employee of UPI at the time of his injury. (The Pl.'s Rule 56.1 Statement at ¶ 4.)

The Cohen Action complaint further alleges that the Plaintiff is a wholly owned subsidiary of UPI and that the Plaintiff owned and operated the mixing machine and the building in which Cohen was injured. (Compl., Ex. A, at ¶¶ 7–9.)

Cohen asserts a negligence claim against the Plaintiff because he contends that the Plaintiff was "negligent, careless and reckless in that [the Plaintiff] failed to operate the mixing machine in a safe and proper manner." (Compl., Ex. A, at ¶ 14.)

In addition, Cohen asserts (i) a claim against SWECO, the alleged manufacturer of the mixing machine, under a strict product liability theory; (ii) a claim against UPI, who Cohen alleges is vicariously liable for the Plaintiff's purported negligent actions; and (iii) a claim against XYZ Cor-

poration, a fictional entity believed to the "owner and/or manufacturer of the subject mixing machine" under negligence and strict product liability theories. (*Id.* at ¶¶ 5, 24–47.)

On July 8, 2014, Cohen voluntarily dismissed a claim against UPI because Cohen received workers compensation benefits from UPI. (Compl., Ex. C, at 2.)

### D. The Denial of Coverage

On July 10, 2013, the Plaintiff sent a letter to the Defendant notifying it of the Cohen Action and requesting indemnification under the Policy.

On July 31, 2014, Meryl R. Lieberman, Esq. ("Lieberman"), counsel for the Defendant, sent a letter to Linda Karlas, Chief Financial Officer for UPI, denying coverage to the Plaintiff for the Cohen Action based on the "Employers Liability" exclusion. (Compl., Ex. C, at 4.)

Specifically, Lieberman wrote, "[C]overage is being denied based on the 'Employers Liability Exclusion' endorsement because the facts establish that [Cohen] was a named insured's employee injured in the course of his employment by any insured, or while performing duties related to the conduct of the insured's business." (*Id.* at 4.)

Lieberman noted that the Defendant was also preserving its "rights to limit or deny coverage based on the absence of 'Designated Operations Coverage,'" which, as noted earlier, limits coverage to injuries "arising out of manufacturing or distributing 'abrasive and polishing products' and 'optics processing equipment.'" (*Id.* at 5.) Lieberman contended that Cohen's alleged injury, which occurred while using a "mixing machine," did not fall under this category, and therefore, was not covered under the Policy. (*Id.*)

On August 25, 2014, Steven Jannace, Esq. ("Jannace"), counsel for the Plaintiffs, responded by sending a letter to Lieberman disputing the Defendant's interpretation of the "Employers' Liability Exclusion." (Jannace Decl., Ex. E.) It contended that the exclusion was intended only to apply to harm caused by the particular named insured who committed the act. (*See id.* at 3.) As Cohen was an employee of UPI, and not the Plaintiff, Jannace asserted that the exclusion did not bar coverage to the Plaintiff for the Cohen Action. (See id. at 2–5.)

On September 10, 2014, Lieberman responded and re-affirmed its decision to deny the Plaintiff coverage. (*See* Jannace Decl., Ex. F.)

### E. The Present Action

As noted, on October 23, 2014, the Plaintiff commenced this action against the Defendant seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) stating that the Defendant is required under the Policy to defend and indemnify the Plaintiff in the Cohen Action; reimburse the Plaintiff for costs and fees already incurred in defending the Cohen Action; and reimburse the Plaintiff for any judgment awarded against it in the Cohen Action. In addition, the Plaintiff asserts a claim for bad faith denial of insurance coverage and seeks consequential, incidental, and punitive damages.

As noted, presently before the Court is (i) a motion by the Defendant pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint; and (ii) a cross-motion by the Plaintiff pursuant to Fed.R.Civ.P. 56 for a judgment on its claims.

The Court will address the parties' arguments with respect to each of the Plaintiffs' claims below.

## II. DISCUSSION

### A. As to the Choice of Law

As an initial matter, the Court notes that because this is a diversity action, the Court must determine which state's law to apply to the Plaintiffs' claims.

The Policy does not contain a choice of law provision. In addition, the parties have not raised a choice of law issue, and both parties rely on New York law in support of their respective positions.

Accordingly, the Court will apply New York law to the Plaintiffs' claims. *See Tehran–Berkeley Civil & Envtl. Engineers v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989) ("The parties' briefs, however, rely on New York law. Under the principle that implied consent to use a forum's law is sufficient to establish choice of law ... we will apply New York law to this case."); *Weaver v. Axis Surplus Ins. Co.,* No. 13–CV–7374 (SJF)(ARL), 2014 WL 5500667, at *5 (E.D.N.Y. Oct. 30, 2014) ("The Policy at issue in this case does not contain a choice of law provision. With respect to the breach of contract claim, and conversely the declaratory judgment claim, the parties have not raised a choice of law issue and both rely upon New York law in support for their respective positions. Therefore, the Court will rely upon New York law for those claims.").

### B. As to the Declaratory Judgment Claim

#### 1. The Defendant's Rule 12(b)(6) Motion to Dismiss

As noted, Section I(1) of the Policy provides coverage to the Plaintiff for "any 'suit' " seeking damages "because of 'bodily injury." (Compl., Ex. B, at § I(1).)

Section V defines "Bodily Injury" as "bodily injury, sickness, or disease sus-

tained by a person, including death resulting from any of these at any time." (*Id.* at § V(4).) "Suit" "means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (*Id.* at § V(18).)

On June 26, 2014, Cohen commenced a personal injury action in Nassau County Supreme Court seeking damages against the Plaintiff for injuries that he sustained while operating a mixing machine owned by the Plaintiff. (Compl., Ex. A, at ¶ 13.) Further, the mixing machine was located on a premises in Hicksville, New York, which was also owned by the Plaintiff, and is listed as a premises covered by the Policy. (*Id.* at ¶¶ 8–9.)

In its motion to dismiss the Plaintiff's declaratory judgment claim, the Defendant does not dispute, nor could it, that the Cohen Action is a "suit" seeking damages for "bodily injury." Rather, the Defendant asserts that the "Employer's Liability" exclusion unambiguously bars coverage for the Cohen Action, and thus, the Plaintiff's claim for indemnification fails as a matter of law. (*See* Defs.' Mem. of Law at 6.) As set forth below, the Court disagrees.

In considering the Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must " 'accept all allegations in the complaint as true and draw all inferences in the nonmoving party's favor.' " *LaFaro v. New York Cardiothoracic Grp., PLLC,* 570 F.3d 471, 475 (2d Cir.2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003)). However, " '[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.' " *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir.2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002)).

■ "Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 98 (2d Cir.2012). Where, as here, there is "a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous." *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir.2011) (citing *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir.2000)). That issue is a question of law for the Court to decide. *See Law Debenture Trust Co. of New York v. Maverick Tube Corp.,* 595 F.3d 458, 465 (2d Cir.2010) ("The matter of whether the contract is ambiguous is a question of law for the court.").

■ "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.' " *JA Apparel Corp.,* 568 F.3d at 396 (quoting *Breed v. Insurance Company of North America,* 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (N.Y.1978)).

■ On the other hand, language is ambiguous where it is " 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Id.* (quoting *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir.2000)); *see also Morgan Stanley Grp. Inc. v. New England Ins. Co.,* 225 F.3d 270, 275 (2d Cir.2000) ("An ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated

agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'") (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997)).

■ If a court determines that "a contract's language is clear and unambiguous, [then it] may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." *Maniolos v. United States,* 741 F.Supp.2d 555, 567 (S.D.N.Y.2010) aff'd, 469 Fed.Appx. 56 (2d Cir.2012); *see also Photopaint Techs., LLC v. Smartlens Corp.,* 335 F.3d 152, 160 (2d Cir.2003) ("[J]udgment as a matter of law is appropriate if the contract language is unambiguous.' ").

■ However, if the court finds that the contract language is ambiguous, "then extrinsic evidence as to the parties' intent may properly be considered." *JA Apparel Corp. v. Abboud,* 568 F.3d 390, 397 (2d Cir.2009). In that regard, "[w]here there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder." *Id.* (citing *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir.2000)). Therefore, if a court determines that a contractual provision is ambiguous, it generally denies the motion to dismiss. *See Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.,* No. 14–CV–7134 VM, 2015 WL 4940126, at *6 (S.D.N.Y. Aug. 10, 2015) ("However, 'where there is relevant extrinsic evidence of the parties' actual intent,' then the contract's meaning becomes an issue of fact' (*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993)) not appropriate for resolution on a Rule 12(b)(6) motion to dismiss (*Bank of New York Trust, N.A. v. Franklin Advisors, Inc.,* 522 F.Supp.2d 632, 637 (S.D.N.Y.2007)).").

Based on these principles, the first question the Court must resolve in deciding the Defendant's Rule 12(b)(6) motion is whether the "Employer's Liability" exclusion is ambiguous. As noted the exclusion states: "This insurance does not apply to any claim, suit, cost or expense arising out of bodily injury to ... an employee of the Named Insured arising out of and in the course of employment by any Insured, or while performing duties related to the conduct of the Insured's business[.]" (Compl., Ex. B.)

Thus, in order for the "Employer's Liability" to apply: (i) the suit must have been commenced by "an employee of the Named Insured"; and (ii) the suit must "aris[e] out of and in the course of employment by any Insured, or while performing duties related to the conduct of the Insured's business[.]" (Compl., Ex. B.)

The Defendant contends that Cohen's claim against the Plaintiff falls under this exclusion because (i) it is undisputed that Cohen was employed by UPI, which is a "Named Insured" under the Policy; and (ii) it is also undisputed that Cohen's negligence claim against the Plaintiff is premised on the allegation that he was injured while working on a "mixing machine" owned by the Plaintiff in the course of his employment with UPI. (The Def.'s Mem. of Law at 6.)

For its part, the Plaintiff does not dispute that Cohen meets the second requirement of the exclusion—namely, that the personal injury suit aris[e] out of and in the course of employment by any Insured. However, it asserts that Cohen does not meet the first requirement—namely, that Cohen is "an employee of the Named Insured." (*See* the Pl.'s Mem. of Law at 10–11.)

In that regard, the Plaintiff contends that the phrase, "the Named Insured," refers narrowly to only the Named Insured who employed the injured employee, and not to the other Named Insureds un-

der the Policy. *(See id.)*. As it is undisputed that "Cohen is not [the Plaintiff's] employee" but an employee of UPI, the Plaintiffs asserts that the "Employers Liability Exclusion . . . cannot operate to preclude coverage for Hastings in the Cohen Action." (The Pl.'s Mem. of Law at 11.)

Initially, the Court finds that both parties' interpretations of the phrase, "an employee of the Named Insured," to be reasonable.

Both the Plaintiff and UPI are "Named Insureds" under the Policy, and the phrase "the Named Insured" is not defined by the Policy. Thus, the phrase, "employee of the Named Insured," could conceivably encompass employees of any of the Named Insureds, as the Defendant contends, or be limited only to the Named Insured who employed the injured employee, as the Plaintiff contends.

Further, there is other language in the Policy which supports both parties' interpretations. In particular, the "Employer's Liability" exclusion also states, "Wherever the word employee appears above, it shall also mean any member, associate, leased worker, temporary worker of, or any person or persons loaned to or volunteering services to, *any* Named Insured." (Compl., Ex. B) (emphasis added).

On its face, the broad definition of "employee" as including any individual performing work on behalf of "*any* Named Insured," appears to be in tension with the language in the exclusion precluding coverage to suits by "employees of *the* Named Insured."

In its cross-motion for summary judgment, the Plaintiff asserts that the "Separation of Insureds" confirms its narrow interpretation. (The Pl.'s Mem. of Law at 9–15.) The "Separation of Insureds" clause provides:

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part

to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or 'suit' is brought.

(Compl., Ex. B, at § IV(7).)

The language of the "Separation of Insureds" clause is not a model of clarity. The clause itself does not explicitly refer to the "Employer's Liability" exclusion, nor any other exclusion. Thus, the "Separation of Insureds" clause does not appear to unambiguously narrow the "Employer's Liability" exclusion to claims against one particular Named Insured, as the Plaintiff contends.

In support of its position, the Plaintiff relies primarily on *Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 46 F.Supp.3d 398, 402 (S.D.N.Y.2014). In that case, a contractor hired a sub-contractor to perform roofing work. *Id.* The subcontractor obtained a commercial liability policy, which added the general contractor as an additional insured. *See id.* at 422.

The policy in *Endurance* excluded suits arising from "Bodily Injury" brought by "(1) An 'employee' of the named insured arising out of and in the course of: (a) Employment by the named insured; or (b) Performing duties related to the conduct of the named insured's business[.]" *Id.* at 404. The exclusion further specified that it applies "(1) Whether the named insured may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury." *Id.* The policy also contained a separation of insureds clause identical to the one relied on by the Plaintiff in this case. *Id.* at 405.

In *Endurance*, an employee of the sub-contractor was injured while working on a roof and brought suit in state court against the general contractor, alleging that its negligence caused the employee's fall. *Id.* Thereafter, the general contractor and its insurance company commenced a separate action against the sub-contractor's insurance company seeking a declaratory judgment that they were entitled to indemnification under the policy. *Id.* at 407. The sub-contractor's insurance company moved for summary judgment alleging that the "employer's liability" exclusion applied because the general contractor was a named insured under the policy. *Id.* The general contractor cross-moved for summary judgment, asserting that the "employer's liability" exclusion did not apply because when read together with the separation of insureds clause, the reference to the "named insured" referred only to the sub-contractor who took out the policy and employed the injured employee. *Id.*

The court in *Endurance* agreed with the general contractor. It pointed out that the purpose of employer's liability exclusions is "to avoid duplication of an employer's workers' compensation insurance by excluding coverage for claims by an injured employee against his own employer." *Id.* at 415. However, "[g]iven that liability policies often extend coverage beyond the named insured, separation of insureds provisions 'were adopted by the insurance industry to define the extent of coverage afforded by a policy issued to more than one insured.'" *Id.* at 416 (quoting *Sacharko v. Ctr. Equities Ltd. P'ship*, 2 Conn.App. 439, 443, 479 A.2d 1219, 1222 (Conn.App.Ct.1984)). That is because the injured employee would only receive worker's compensation from the named insured that employed him and not the other named insureds. *See id.* Thus, the risk of "double-coverage," which the employer's liability exclusion was intended to address, was not present for the other named insureds, and therefore, no purpose was served by denying coverage to them. *See id.* at 417; *see also Shelby Realty LLC v. Nat'l Sur. Corp.*, No. 06 CIV. 3260 NRB, 2007 WL 1180651, at *4 (S.D.N.Y. Apr. 11, 2007) ("The Employee Exclusion recognizes that general liability coverage is unnecessary for an employer whose employee is injured in the course of his employment since the workman's compensation system (and the required workman's compensation insurance coverage) covers such an injury. However, a non-employer, such as Shelby, needs general liability coverage if sued by someone else's employee.").

Thus, the court in *Endurance* found that construing the exclusion narrowly "is supported by the general purposes of employer's liability exclusions and separation of insureds provisions in commercial general liability policies, namely, to avoid duplicate coverage when an employee's claim against his own employer is covered by workers' compensation insurance and to clarify the insurer's separate obligation to each distinct insured." *Id.* at 420–421. As such, the Court found no ambiguity in the exclusion, and adopted the general contractor's interpretation. *See id.* In the alternative, the court found that the extrinsic evidence and the rule of *contra proferentem*, discussed *infra*, also supported the plaintiff's interpretation. *See id.* at 422–25. Accordingly, the court found that the employer's liability exclusion did not apply and granted summary judgment in favor of the general contractor. *See id.* at 431.

On the other hand, the Defendant relies primarily on *Nautilus Ins. Co. v. Barfield Realty Corp.*, No. 11 CIV. 7425(JPO), 2012 WL 4889280, at *1 (S.D.N.Y. Oct. 16, 2012). Similar to *Endurance*, in *Nautilus*, an insurer sought a declaratory judgment that it was not required to indemnify two named insureds for a personal injury suit

brought against them by an employee of the sub-contractor hired by one of the named insureds. *See id.* at \*1–2. The policy contained an employer's liability exclusion with slightly different language than the exclusion at issue in *Endurance*. Specifically, the exclusion stated, "the coverage 'does not apply to 'bodily injury,' 'property damage,' 'personal and advertising injury' or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of *any insured*, or any acts or omissions in connection with the general supervision of such work.'" *Id.* at \*3 (emphasis added). Thus, the exclusion referred to work performed by "any insured," and not "the insured," as was the case in *Endurance*. *See id.* The policy also contained an separation of insureds clause and an endorsement broadening the definition of "employee" to include, "[A]ny person or persons who provide services directly or indirectly to any insured, regardless of where the services are performed or where the 'bodily injury' occurs[.]" *Id.*

The court granted the insurer's motion for summary judgment and found that "the plain language of the Policy relieves [the insurer] of any duty to indemnify or defend [the named insureds] with respect to [the employee's] claims in the underlying state court action." *Id.* at \*11. With respect to the named insured who hired the contractor, the court found that the employee fell under the exclusion even though he was not employed by the named insured because "contractors and subcontractors are explicitly included in the definition of the term, under the Policy's unambiguous definition[.]" *Id.* at \*5.

With respect to the other named insured who was not involved in hiring the contractor, the court found it significant that the exclusion referred to "any insured," and not "the insured." *Id.* at \*9. According to the court, the phrase, "'any insured,'

clearly meant that "irrespective of which insured hired a particular contractor or subcontractor, all insured parties are equally bound by the [exclusion's] language."" *Id.* at \*9. As such, the court found that the separation of insureds clause did not change the meaning of the employer's liability exclusion because to hold otherwise would render the exclusionary language, "any insured," "inoperative." *Id.* at \*10. However, the Court noted in *dicta* that if the exclusionary language had referred to "the insured," the result would have been different: "This Court finds convincing the argument that where exclusionary endorsements refer to 'the insured,' rather than 'any insured,' the separation of insureds language does indeed control, as the clauses may be read together in harmony." *Id.*

Here, the "Employer's Liability" exclusion states, "This insurance does not apply to any claim, suit, cost or expense arising out of bodily injury to ... an employee of the Named Insured arising out of and in the course of employment by any Insured, or while performing duties related to the conduct of the Insured's business[.]" (Compl., Ex. B.)

The exclusion bears some similarity to the exclusion at issue in *Endurance*. Notably, the exclusion, similar to the exclusion in *Endurance*, also refers to "the Named Insured." *See Endurance*, 46 F.Supp.3d at 404 (noting that the policy excluded suits arising from Bodily Injury brought by "'(1) An 'employee' of *the named insured* arising out of and in the course of: (a) Employment by the named insured; or (b) Performing duties related to the conduct of the named insured's business[.]'") (emphasis added).

However, there are also key differences between the "Employer's Liability" exclusion here and the exclusion in *Endurance*. Significantly, here, "employee" is defined

in the "Employer's Liability" exclusion as including employees of "any insured," not just employees of "the Named Insured"—"Wherever the word employee appears above, it shall also mean any member, associate, leased worker, temporary worker of, or any person or persons loaned to or volunteering services to, *any* Named Insured." (Compl., Ex. B) (emphasis added). The exclusion in *Endurance* did not contain such a broad definition of "employee." *See Endurance,* 46 F.Supp.3d at 404. Thus, there was no ambiguity in *Endurance* with respect to what the phrase, "the Named Insured," meant. *See id.*

█ By contrast, here, the Court finds that the broad definition of "employee" in the "Employer's Liability" exclusion as including individuals who work on behalf of "any insured," to at the very least create an ambiguity as to what the exclusionary language, "employees of the Named Insured," means—does it refer to only the Named Insured who employed the injured worker, as the Plaintiff contends, or does it refer to any of the Named Insured, as the Defendant contends. Given that the language "Employer's Liability" exclusion references both "the Named Insured" and "any Named Insured," the answer to that question is not clear, nor is it made any clearer by reference to the Separation of Insureds clause. *Cf. Endurance Am. Specialty Ins. Co. v. Century Sur. Co.,* 46 F.Supp.3d 398, 417 (S.D.N.Y.2014) ("'[W]here exclusionary endorsements refer to 'the insured,' rather than 'any insured,' the separation of insureds language does indeed control, as the clauses may be read together in harmony.'") (quoting *Nautilus Ins. Co.,* 2012 WL 4889280 at *10.)

Therefore, the Court finds that the language of the "Employer's Liability" exclusion supports both parties' interpretations, and as a result, the court concludes that the exclusion is ambiguous as a matter of law. *See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC,* 692 F.3d 42, 53 (2d Cir.2012) ("'[A]mbiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'") (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 184 (2d Cir.2003)).

Accordingly, the Court denies the Defendant's motion to dismiss the declaratory judgment claim. *See Wells Fargo Bank, N.A. v. Bank of Am., N.A.,* No. 11 CIV. 4062(JPO), 2013 WL 372149, at *4 (S.D.N.Y. Jan. 31, 2013) ("However, because the court may consider extrinsic evidence where the contract is not clear on its face, contracts that are facially ambiguous should not be resolved on the pleadings."); *Maniolos v. United States,* 741 F.Supp.2d 555, 567 (S.D.N.Y.2010) ("However, 'when the language of a contract is ambiguous, its construction presents a question of fact,' which of course precludes summary dismissal' on a Rule 12(b)(6) motion.") (quoting *Crowley v. VisionMaker, LLC,* 512 F.Supp.2d 144, 152 (S.D.N.Y.2007)).

The Court will now turn to the Plaintiff's cross-motion for summary judgment, to which different standards apply.

### 2. The Plaintiff's Cross–Motion for Summary Judgment

As noted, the Plaintiff filed a cross-motion for summary judgment on its declaratory judgment claim for indemnification.

Fed.R.Civ.P. 56(a) provides that a court may grant summary judgment when the "movant shows there is no genuine issue as to any material fact, and the moving

216

party is entitled to judgment as a matter of law."

Unlike in deciding a motion to dismiss—where the court's determination that a contract is ambiguous generally results in the denial of the motion to dismiss—, a court's determination at the summary judgment stage that an insurance policy is ambiguous does not end the matter. Rather, in deciding a summary judgment motion, "[i]f a court concludes a provision in an insurance contract is ambiguous, it may consider extrinsic evidence to ascertain the parties' intent at the formation of the contract." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir.2012) (citing *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir.2009)); *see also Endurance*, 46 F.Supp.3d at 414 ("Thus, even when a contract is ambiguous, if the parol [sic] evidence offered by the parties does not resolve that ambiguity, or after opportunity to do so the parties do not offer extrinsic evidence to resolve the ambiguity, the Court must construe the contract as a matter of law on a summary judgment motion.") (collecting cases).

Significantly, "[i]f the extrinsic evidence fails to establish the parties' intent, courts may apply other rules of contract interpretation, including New York's rule of *contra proferentem*, according to which ambiguity should be resolved in favor of the insured." *Id.; see also Darwin Nat. Assur. Co. v. Westport Ins. Corp.*, No. 13–CV–02076 PKC, 2015 WL 1475887, at *10 (E.D.N.Y. Mar. 31, 2015) ("If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, a court 'may apply other rules of contract construction, including the rule of *contra proferentem*, which generally provides that where an insurer drafts a policy 'any ambiguity in [the] . . . policy should be resolved in favor of the insured.' ' ") (quoting *Morgan Stan-*

*ley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275–76 (2d Cir.2000)).

The *"contra-proferentem"* rule states that " 'where a policy of insurance is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer.' " *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 697 (2d Cir.1998) (quoting *Liverpool & London & Globe Ins. Co. v. Kearney*, 180 U.S. 132, 136, 21 S.Ct. 326, 328, 45 L.Ed. 460 (1901)). The Second Circuit has explained that the rule exists because "insurers generally prepare policies," and " 'when the meaning is doubtful, it should be construed most favorably to the insured, who had nothing to do with the preparation thereof.' " *Id.* (quoting *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39 (N.Y.1974)).

"This rule gains added force when ambiguities are found in an exclusionary clause." *Id.* (citing *Thomas J. Lipton, Inc.*, 34 N.Y.2d at 357, 357 N.Y.S.2d 705, 314 N.E.2d 37, 39). That is because there is an additional presumption placing the burden on the insurer to prove the exclusion exists: " 'to negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon.' " *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir.2006) (quoting *Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York*, 241 A.D.2d 66, 70, 671 N.Y.S.2d 66, 69 (1st Dep't 1998)); *see also Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272, 275 (N.Y.1984) ("Any such exclusions or exceptions from policy coverage must be specific

and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.").

■■■ Therefore, once the ambiguity in the exclusion is found, " 'the insurer bears the heavy burden of demonstrating that it would be unreasonable for the average man reading the policy to construe it as the insured does and that its interpretation of the insurance policy provisions is the only construction that fairly could be placed on the policy.' " *Haber*, 137 F.3d at 698 (quoting *Kenevan v. Empire Blue Cross & Blue Shield*, 791 F.Supp. 75, 79 (S.D.N.Y.1992)).

■■■ As discussed earlier, the Court finds the "Employer's Liability" exclusion to be ambiguous as a matter of law. Thus, based on the principles set forth above, the Court must first evaluate the extrinsic evidence, if any, offered by the parties with respect to the Plaintiff's motion for summary judgment. If the extrinsic evidence does not clarify the ambiguity in the "Employer's Liability" exclusion, the Court must apply the *contra-proferentem* rule, and thus, find in favor of the Plaintiff.

In support of its motion for summary judgment, the Plaintiff offers a declaration by Neil Johnson ("Johnson"), President of UPI, stating that Cohen was an employee of UPI, not the Plaintiff, at the time of the accident. (*Id.* at ¶ 5–7.) This fact is undisputed and already pled in the complaint. (Compl. at ¶ 13.) Thus, this declaration offers no insight into the meaning of the "Employer's Liability" exclusion.

In addition, the Plaintiff offers copies of (i) the Cohen Action complaint; (ii) the Plaintiff's answer to the Cohen Action complaint; and (iii) the letters exchanged between the parties from July 31, 2014 to October 23, 2014 regarding the Defendant's decision to deny the Plaintiff with coverage for the Cohen Action. (*See* Jannace Decl., Exs. A–J.)

■■■ These documents, all of which were attached to the complaint in this action, merely restate the parties' legal positions with respect to the "Employer's Liability" exclusion. Under well-established New York law, the parties' legal interpretations are not probative as to the meaning of the "Employer's Liability" exclusion. *See JA Apparel Corp.*, 568 F.3d at 396 (" 'Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.' ") (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989)). Thus, the Court does not find that the extrinsic evidence offered by the Plaintiff resolves the ambiguity in the "Employer's Liability" exclusion.

The Defendant does not offer any extrinsic evidence in opposition to the Plaintiff's motion for summary judgment. Rather, it relies entirely on the language of the Policy itself. (*See* the Def.'s Opp'n Mem. of Law, Dkt. No. 29.)

In light of the lack of any probative extrinsic evidence as to the parties' intent, the Court finds it appropriate to apply the *contra-proferentem* rule, which, as noted, requires the court to construe an ambiguity in favor of the insured and also, to construe policy exclusions narrowly. *See Olin Corp.*, 704 F.3d at 99 ("If the extrinsic evidence fails to establish the parties' intent, courts may apply other rules of contract interpretation, including New York's rule of *contra proferentem*, according to which ambiguity should be resolved in favor of the insured.").

As discussed earlier, the Court finds that the Plaintiff's interpretation of the "Employer's Liability" exclusion as limiting coverage only to personal injury suits brought against the named insured who actually employed the injured worker to be plausible. The Court also finds that it

would be plausible to interpret the exclusion more broadly as limiting coverage to any of the named insureds for a personal injury suit brought by an employee performing work on behalf of at least one of the named insureds, as the Defendant contends.

However, applying the rule of *contra proferentem* to the facts here, the Court finds it appropriate to adopt the Plaintiff's interpretation of the exclusion because the Plaintiff is the insured and its interpretation of the exclusion is the narrower interpretation. *See, e.g., Admiral Ins. Co. v. Joy Contractors, Inc.*, 19 N.Y.3d 448, 462, 948 N.Y.S.2d 862, 972 N.E.2d 103, 111 (N.Y.2012) ("[T]he CGL policy's language is ambiguous as to whether the exclusion precludes from coverage any limited liability company not shown as a named insured in the CGL policy's declarations (Admiral's view) or only limited liability companies (if any) acquired or formed during the contract period (the position taken by the owners/developers); consequently, this provision should be construed in the owners/developers' favor."); *Haber*, 137 F.3d at 698 ("While we hesitate to agree with the district court that the Haber's interpretation was the more reasonable one, we have determined that St. Paul has not met its burden of showing that it would be unreasonable for the average man reading the Endorsement to construe it as the Habers do and that its interpretation is the only one that could be fairly placed on the Endorsement.").

There is no dispute that Cohen was an employee of UPI, and not the Plaintiff. Therefore, applying the narrow interpretation of the "Employer's Liability" exclusion, the Court finds as a matter of law that the "Employer's Liability" exclusion does not bar coverage to the Plaintiff for damages and costs associated with the Cohen Action.

Moreover, as noted above, it is undisputed that the Cohen Action falls within the relevant period and under the category of "suits" for "bodily injury," and therefore, is clearly covered by the Policy barring the application of an exclusion. Aside from the "Employer's Liability" exclusion, the Defendant does not raise any other basis for denying coverage to the Plaintiff for damages, legal costs, and medical expenses resulting from the Cohen Action.

Accordingly, the Court grants the Plaintiff's motion for summary judgment as to the Plaintiff's claim seeking a declaratory judgment that the Defendant is required to provide coverage to the Plaintiff under the Policy for the Cohen Action.

### 3. As to the "Designated Operations Coverage"

Endorsement In its July 31, 2014 letter to the Plaintiff, the Defendant stated:

It is alleged in the [Cohen Action] complaint that [Cohen] was injured while using a 'mixing machine,' which is not within the specified categories of products, and the Company has been provided no information that the alleged incident arises out of the 'Designated Operations' as so defined. Accordingly, the Company reserves its rights to limit or deny coverage based on the absence of 'Designated Operations Coverage' in the first instance.

(Compl., Ex. C, at p. 4–5.)

The "Designated Operations Coverage" endorsement states, "This insurance applies only to 'bodily injury' or 'property damage' arising out of the 'designated operations' shown in the Schedule." (Compl., Ex. B.) The schedule, in turn, defines "designated operations" as "[m]anufacturing and distribution of abrasive and polishing products" and "[m]anufacturing and distribution of optics processing equipment." (*See id.*)

The Plaintiff appears to seek a separate declaratory judgment that the "Designated Operations Coverage" endorsement "does not and cannot operate to preclude coverage for [the Plaintiff] based on the facts of this case." (The Pl.'s Mem. of Law at 16.)

In response, the Defendant contends that the Plaintiff is not entitled to a judgment as to the "Designated Operations" endorsement because the Defendant has explicitly not raised it as a defense to coverage in this action. (The Def.'s Opp'n Mem. of Law at 11–12.) Therefore, the Defendant contends that a declaratory judgment is inappropriate because "there is no live controversy concerning the application of the Designated Operations Coverage endorsement to the facts of the Underlying Action." (Id. at 12.)

In response, the Plaintiff contends that the "Designated Operations" endorsement does present a live controversy because the Defendant appears to deny coverage based on the endorsement. (The Pls.' Reply Mem. of Law at 8.) It also claims that the Defendant is merely "looking for a potential second bite of the apple down the road" by attempting to "avoid a determination of the Designated Operations Endorsement." (Id.)

"A party seeking a declaratory judgment from a district court bears the burden of proving the existence of an actual case or controversy." *Travelers Indem. Co. v. Liberty Med. Imaging Associates, P.C.,* No. 07–CV–2519 CPS JMO, 2009 WL 962788, at *3 (E.D.N.Y. Apr. 8, 2009) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)); *see also* 28 U.S.C. § 2201(a). "Actual case or controversy" has been defined as "as one that is 'real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *E.R. Squibb*

*& Sons, Inc. v. Lloyd's & Companies,* 241 F.3d 154, 177 (2d Cir.2001) (quoting *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 17 (2d Cir.1993)).

Stated another way, "Declaratory relief is 'proper only (1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.' " *Travelers Indem. Co.,* 2009 WL 962788, at *3 (quoting *Maryland Cas. Co. v. Rosen,* 445 F.2d 1012, 1014 (2d Cir. 1971)); *see also E.R. Squibb & Sons, Inc.,* 241 F.3d 154, 177 (2d Cir.2001) ("Like any other action brought in federal court, a declaratory judgment is available to resolve a real question of conflicting legal interests ... Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.") (quoting *Associated Indemnity Corp. v. Fairchild Industries, Inc.,* 961 F.2d 32 (2d Cir.1992)).

The Court see no reason why it should issue a separate judgment on the issue of the "Designated Operations Coverage" where, as here, the Defendant has not raised it as a defense to indemnification in this action. To the extent that the Plaintiff is concerned that the Defendant will file a collateral action seeking to deny coverage on the basis of the "Designated Operations Coverage," that concern can be addressed by the doctrine of *res judicata,* which holds "that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry,* 449 U.S.

90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)).

As the Court sees no "actual controversy" to resolve with respect to the "Designated Operations" endorsement, the Court declines the Plaintiff's apparent invitation to issue a separate judgment on that issue.

### C. As to the Plaintiff's Bad Faith Claim

 The Complaint also asserts that the Defendant's denial of coverage was in "bad faith," and a result, the Plaintiff is entitled to recover "consequential, incidental and punitive damages including, but not limited to costs, disbursements, judgments, awards, settlements and legal fees." (Compl. at ¶ 54–55.)

The Defendant asserts that the Plaintiff's bad faith claim fails as a matter of law because "there is no independent tort for breach of the contractual covenant of good faith and fair dealing under New York law, but rather an insured's relief, if any at all, is limited to breach of contract damages." (The Def.'s Mem. of Law at 9–10.) The Court agrees.

"[A] host of courts have held that there is no separate, generalized tort claim for bad faith denial of insurance in New York." *Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.,* No. 05–CV–0813(JFB)(RLM), 2006 WL 1720429, at *8 (E.D.N.Y. June 21, 2006) (collecting cases); *see also Dekel v. Unum Provident Corp.,* No. 04CV00413(DLI)(ETB), 2007 WL 812986, at *2 (E.D.N.Y. Mar. 14, 2007) ("[T]he lynchpin of Dekel's claim for punitive damages-that Unum Provident committed a tortuous act through the bad faith denial of Dekel's insurance claim-is not cognizable under New York law."); *Zawahir v. Berkshire Life Ins. Co.,* 22 A.D.3d 841, 842, 804 N.Y.S.2d 405, 406 (2d Dep't 2005) ("Assuming that the plaintiff intended to allege 'insurance bad faith,' he failed to state a cause of action, as 'there is no

separate cause of action in tort for an insurer's bad faith failure to perform its obligations' under an insurance contract."); *Cont'l Cas. Co. v. Nationwide Indem. Co.,* 16 A.D.3d 353, 355, 792 N.Y.S.2d 434, 435 (1st Dep't 2005) ("This counterclaim was properly dismissed since there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy.").

There are no non-conclusory allegations in the complaint which establish an independent tort duty on the part of the Defendant. Rather, the Plaintiff's bad faith claim arises solely from the Defendant's denial of coverage. Moreover, as noted above, the Court finds that the Defendant's interpretation of the "Employer's Liability" exclusion to be reasonable, although it did not prevail upon the application of the *contra proferentem* rule. Therefore, even construing the allegations in the complaint as true, a reasonable jury could not find anything other than the Defendant's denial of coverage was based in its good faith reading of the Policy. Accordingly, the Court finds that the Plaintiff's bad faith claim fails as a matter of law. *See, e.g., Funk v. Allstate Ins. Co.,* No. 13–CV–5933 JS GRB, 2013 WL 6537031, at *4 (E.D.N.Y. Dec. 13, 2013) ("Since Plaintiffs do not allege a tort independent of their respective contract with Defendant, i.e., that Defendant owed them a duty of care distinct from its contractual obligations or engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations, see *id.,* the Complaint fails to state a claim for bad faith denial of coverage."); *Nouveau Elevator Indus., Inc.,* 2006 WL 1720429, at *8 ("On these facts, the Court finds that no reasonable trier of fact could determine that the dispute reflects anything more than an 'arguable difference of opinion' rather than bad faith by the insurer, and

so the bad faith denial of insurance claim fails as a matter of law.").

## III. CONCLUSION.

For the foregoing reasons, the Court (i) grants the Defendant's motion to dismiss solely with respect to the Plaintiff's claim for bad faith denial of coverage; and (ii) grants the Plaintiff's cross-motion for summary judgment solely with respect to the Plaintiff's claim for a declaratory judgment and finds that the Plaintiff is entitled to indemnification for the Cohen Action subject to the applicable limits on damages established by the Policy.

The Clerk of the Court is directed to enter judgment for the Plaintiff consistent with this Order and to close this case.

**SO ORDERED.**